AG FARMS, INC., *et al.*, Plaintiffs-Appellants, v. AMERICAN PREMIER UNDERWRITERS, INC., Successor in Title to Penn Central Corporation, *et al.*, Defendants-Appellees.

Fourth District   No. 5—97—0847

Argued March 17, 1998.—Opinion filed May 15, 1998.—Rehearing denied June 17, 1998.

Paul L. Stone (argued), of Stone, Stone & Hanson, of Sullivan, for appellants.

David Y. Eberspacher (argued), of Hefner & Eberspacher, of Mattoon, for appellee American Premier Underwriters, Inc.

James E. Ryan, Attorney General, of Springfield (William L. Broom III and Patricia A. Small (argued), Special Assistant Attorneys General, and Michael J. Luke, Assistant Attorney General, of counsel), for appellee Department of Natural Resources.

PRESIDING JUSTICE GARMAN delivered the opinion of the court:

Plaintiffs AG Farms, Inc., and Harry and Imogene Van Deveer appeal from the May 26, 1997, order of the circuit court of Moultrie County dismissing their lawsuit and withdrawing initial certification of a class action.

## I. BACKGROUND

In 1872 or thereabouts, the Paris & Decatur Railroad (P&DRR) constructed a railroad between Arthur and Hervey City, Illinois. On September 10, 1984, Penn Central Corporation (Penn Central), the successor railroad to the P&DRR, notified the Illinois Department of Transportation by letter of its intention to abandon this track. Between 1984 and 1991, Penn Central removed its tracks, ties, and other equipment and, on September 20, 1991, conveyed the right-of-way to the Department of Conservation of the State of Illinois (DOC), reserving certain interests.

Named plaintiffs are owners of fee simple interests in parcels that, they claim, include portions of the right-of-way. They brought suit, individually and as representatives of a class of similarly situated persons (735 ILCS 5/2—801 (West 1996)), against defendants American Premier Underwriters, Inc. (American Premier), and the Department of Natural Resources of the State of Illinois (DNR). American Premier is the successor in interest to Penn Central; the DNR was formerly the DOC.

Plaintiffs claim that Penn Central's only interest in the right-of-way was an easement. Specifically, plaintiff AG Farms alleges in count I of the complaint that one of its predecessors in title granted a right-of-way easement by deed to the P&DRR. It seeks certification of a plaintiff class of property owners whose predecessors in interest granted right-of-way easements to the P&DRR by deeds essentially identical in language to its own. Plaintiffs Harry and Imogene Van Deveer allege in count II that one of their predecessors in title granted a right-of-way easement by deed to Charles Waring and that the deed is in the railroad's chain of title. They seek certification of a plaintiff class of property owners whose predecessors in interest granted rights-of-way to Waring by deeds essentially identical in language to their own. AG Farms and the Van Deveers also allege in count III that there is no recorded deed of any interest to Penn Central or any of its predecessors in title to a right-of-way over the land described in this count and, therefore, that a prescriptive easement resulted from the railroad's adverse use of the right-of-way. They seek certification of a plaintiff class of property owners whose

property includes a portion of the right-of-way for which there is no recorded deed to Penn Central or any of its predecessors in title. (We note that the parties use the term "adverse possession" when discussing the alleged easements on these properties. If plaintiffs are correct in their assertion that the railroad acquired only an easement, then the title owners never gave up possession and the railroad and its successors were entitled only to the use, not the possession, of the property. Thus, for the sake of clarity, we use the term "prescriptive easement.")

The relief sought by plaintiffs, individually and as representatives of three subclasses of property owners, is a declaratory judgment (735 ILCS 5/2—701 (West 1996)) that (1) the interest obtained by the P&DRR, whether by deed or by prescription, was a right-of-way easement; (2) that interest terminated when Penn Central abandoned the right-of-way by ceasing to use it for railroad purposes; and (3) Penn Central, therefore, had no interest to convey to DOC. As a result, plaintiffs assert, neither American Premier nor DNR now has any interest in the former right-of-way. Plaintiffs specifically do not ask the trial court to determine the actual present ownership of any of the properties in question.

Plaintiffs filed their original complaint on April 8, 1996, and a motion for class determination on April 9, 1996. At a June 20, 1996, hearing, plaintiffs' motion for class determination was allowed, as was their petition for leave to file a third-amended complaint. The third-amended complaint was filed on September 25, 1996. On February 14, 1997, defendant American Premier filed a motion to reconsider the class determination and a motion to dismiss under section 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(9) (West 1996)). The trial court announced its decision from the bench on May 22, 1997, and entered an order on May 26, 1997, decertifying the class action and dismissing the entire complaint with prejudice. The trial court denied plaintiffs' motion for reconsideration on August 26, 1997, and plaintiffs filed notice of appeal on September 25, 1997.

## II. DECLARATORY JUDGMENT ACTION

■ American Premier's motion to dismiss was brought under section 2—619(a)(9) of the Code, which provides for involuntary dismissal if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1996). Specifically, the motion alleged that plaintiffs failed to "properly plead a 'Declaratory Judgment' cause of action," in that the complaint "is not dispositive of the real

controversy, i.e., title to, and the right to possession of, the various parcels of property."

As this court has stated previously:

"Motions made pursuant to section 2—619 of the Code must be limited to the grounds enumerated therein. [Citations.] Failure to state a cause of action is not such an enumerated ground, but is instead a basis for a section 2—615 motion." *Universal Underwriters Insurance Co. ex. rel Manley Ford, Inc. v. Long*, 215 Ill. App. 3d 396, 399, 574 N.E.2d 1284, 1286 (1991).

Although both motions admit all well-pleaded facts of the complaint, "the legal sufficiency of the complaint is disputed in a section 2—615 motion, but admitted in a section 2—619 motion." *Bank of Northern Illinois v. Nugent*, 223 Ill. App. 3d 1, 7, 584 N.E.2d 948, 952 (1991). The supreme court has acknowledged that there is "some degree of overlap" between the two motions, particularly when section 2—619(a)(9) of the Code is invoked as it is here, and defined "affirmative matter" in a section 2—619(a)(9) motion as "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485-86, 639 N.E.2d 1282, 1290 (1994).

■ American Premier's motion, although labeled a section 2—619 motion, asserts that plaintiffs did not properly plead a declaratory judgment action, in that the relief sought would not dispose of the controversy. This assertion does not raise an "affirmative matter" under section 2—619 of the Code but, instead, challenges the legal sufficiency of the complaint, the ground supporting a section 2—615 motion. The confusion here is attributable, in part, to the defendants' conflating the issues of declaratory judgment and class action. At this stage of the analysis, the issue is whether the *individual* plaintiffs properly pleaded an action for declaratory judgment.

As this court has previously noted, the standard of review under both sections 2—619 and 2—615 of the Code is *de novo. Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (1993). Defendants, therefore, are mistaken when they assert that this court must apply an abuse-of-discretion standard to this question. Defendants fail to distinguish between refusing to grant declaratory relief after consideration of the merits and granting of a motion to dismiss on the pleadings.

"The trial court has a discretion as to granting declaratory judgment even though the statute would permit a judgment under the facts. [Citations.] However, when considering a motion to dismiss the complaint, the court has no exercise of discretion where the

complaint states a cause of action. It is only where the plaintiff is entitled to no relief on the facts alleged that the complaint should be dismissed." *La Salle Casualty Co. v. Lobono*, 93 Ill. App. 2d 114, 119, 236 N.E.2d 405, 408 (1968).

Reversal on this basis, however, is not necessary because the mischaracterization of the *motion to dismiss as a section 2—619 mo-* tion did not prejudice the nonmovants (*Illinois Graphics*, 159 Ill. 2d at 484, 639 N.E.2d at 1289).

Plaintiffs seek a declaratory judgment pursuant to section 2—701 of the Code, sometimes referred to as the declaratory judgment statute or act (Act), which states in part:

"(a) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of *** any deed, *** and a declaration of the rights of the parties interested. *** The court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding. ***

(b) Declarations of rights, as herein provided for, may be obtained by means of a pleading seeking that relief alone ***." 735 ILCS 5/2—701 (West 1996).

The question presented by the motion to dismiss under section 2—615 of the Code is "whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief." *Illinois Graphics*, 159 Ill. 2d at 488, 639 N.E.2d at 1291. Specifically, the test of sufficiency of a declaratory judgment action is whether the complaint "alleges facts showing an actual or justiciable controversy between the parties and prays for a declaration of rights and other legal relations of the parties." *Lobono*, 93 Ill. App. 2d at 118, 236 N.E.2d at 408.

■ This court has previously identified the elements of an action for declaratory judgment: (1) a plaintiff with a tangible legal interest, (2) a defendant with an adverse interest, and (3) an actual controversy regarding that interest. *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040, 1050, 559 N.E.2d 577, 584 (1990). The first element addresses the standing of the plaintiff to bring an action for declaratory relief. The supreme court has articulated a two-part test for standing: (1) there must be an actual controversy and (2) the plaintiff must be "interested in the controversy." *Underground Contractors Ass'n v. City of Chicago*, 66 Ill. 2d 371, 375-76, 362 N.E.2d 298, 300-01 (1977).

The supreme court defined "actual controversy" as "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Underground Contractors*, 66 Ill. 2d at 375, 362 N.E.2d at 300.

American Premier's motion does not challenge plaintiffs' standing or that there is an *actual* controversy. Instead, the motion argued that declaratory judgment would not dispose of the "*real* controversy." (Emphasis added.) The trial court was persuaded by this reasoning and concluded that this is not "the kind of situation and dispute that is *** properly amenable to resolution by declaratory judgment." Declining to accept plaintiffs' characterization of the suit as "just a dispute over whether or not the two named defendants have a right of possession," the trial court said, "I think the real issue here is [who has] title to this property." Further, the trial court stated, this question cannot be answered "without this case evolving into, in effect, individual cases of quiet title."

In effect, American Premier does not deny the existence of the basic elements of an action for declaratory judgment, but it takes exception to plaintiffs' prayer for relief. As American Premier acknowledges, "It is the nature of the relief sought," to which they object. American Premier, however, cites no cases where a declaratory judgment action has been dismissed because the relief sought was determined, prior to a hearing on the merits, to be either too broad or, as they allege in this case, too narrow. In response to this question at oral arguments, counsel for American Premier cited *Marlow v. American Suzuki Motor Corp.*, 222 Ill. App. 3d 722, 584 N.E.2d 345 (1991). *Marlow*, which we will discuss in greater length below, is inapposite. In *Marlow*, the relief sought was a finding as to only one element of a products liability cause of action—a declaration that the product in question was defectively designed. *Marlow*, 222 Ill. App. 3d at 730, 584 N.E.2d at 349. In the instant case, the relief sought is a final and binding declaration of the rights of one party with respect to the property at issue.

This court has previously upheld the grant of summary judgment for the plaintiff where the relief sought was a declaration that a defendant railroad had abandoned and forfeited its interest in a right-of-way and that the plaintiff was, therefore, owner of the property. *City of Maroa v. Illinois Central R.R.*, 229 Ill. App. 3d 503, 504, 592 N.E.2d 660, 661 (1992). That case required us to interpret a federal statute. This case would require construction of a deed and application of the law of easements. The Act specifically permits declaratory judgment actions for the construction of both statutes and deeds. 735 ILCS 5/2—701 (West 1996).

Plaintiffs in this case seek a narrower result than in *City of Maroa*. They want the trial court to take only the first step—declaring that the railroad forfeited its interest when it abandoned the right-of-way—but not the second step—declaring that plaintiffs are the owners of the property in question. In effect, they seek a declaration of the rights of the defendants in isolation, not a declaration of the rights of the defendants as against any particular adverse claimant. However:

> "No action is open to objection on the ground that only a declaration of rights is sought and a court may in cases of actual controversy make binding declarations of rights having the force of final judgments whether or not any consequential relief is, or could be, claimed." *Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.*, 79 Ill. App. 3d 799, 804, 398 N.E.2d 984, 987 (1979).

Ultimately, the question for this court is whether a declaratory judgment action may lie when the plaintiff seeks a declaration of the rights of only one party rather than the rights of all parties.

Defendants rely on *Lihosit v. State Farm Mutual Automobile Insurance Co.*, 264 Ill. App. 3d 576, 636 N.E.2d 625 (1993). *Lihosit* is not factually similar to the present case, because it upheld the dismissal of an action for declaratory judgment where the second element of a declaratory judgment action was not met—the defendant did not have an interest adverse to the plaintiff. *Lihosit*, however, does provide the background for our analysis:

> "Although we are required to apply the Act liberally [citation], its provisions are to be strictly complied with and its prescribed rules of procedure are to be closely followed. [Citations.] Declaratory judgments are designed to settle and fix the rights of the parties before there has been an irrevocable change in their positions in disregard of their respective claims of right, and the procedure should be used to afford security and relief against uncertainty with a view to avoiding litigation, not toward aiding it." *Lihosit*, 264 Ill. App. 3d at 579-80, 636 N.E.2d at 628.

Plaintiffs cite numerous cases, in addition to the plain language of the statute, for the proposition that a declaratory judgment action is an appropriate mechanism to obtain a judicial construction of a deed or a judicial determination of easement by prescription. None of these cases, however, has granted the limited relief sought by plaintiffs. On the other hand, as noted above, defendants cite no cases where a declaratory judgment action has been dismissed because the plaintiffs sought only a declaration that the other party had no rights in the disputed property.

Defendants do, however, point to the availability of another remedy—an action to quiet title—in support of dismissal of the declara-

tory judgment action. American Premier cites *Marlow*, 222 Ill. App. 3d at 731, 584 N.E.2d at 350: "[T]he existence of another available remedy support[s] the exercise of the court's discretion in dismissing the complaint."

DNR cites four cases, two of which were decided by this court, for the same proposition. First, *Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 203, 619 N.E.2d 144, 155 (1993), states: "The mere existence of another remedy does not require dismissal of a declaratory judgment action, but it may constitute sufficient grounds for dismissal in the trial court's discretion." In *Mayfair*, the parties were involved in ongoing litigation when the trial court dismissed a separate declaratory judgment action dealing with some of the same issues as the pending lawsuit. Second, in *Tait v. County of Sangamon*, 138 Ill. App. 3d 169, 170-71, 485 N.E.2d 558, 559 (1985), this court upheld the dismissal of a declaratory judgment action where the plaintiff had another remedy available. This was not the only basis of the dismissal, however. The declaratory judgment action in *Tait* was also held to be an impermissible collateral attack on a criminal proceeding where the plaintiff had already paid the disputed court costs and was, thus, "attacking a prior judgment and *** not seeking to learn the consequences of future action." *Tait*, 138 Ill. App. 3d at 171, 485 N.E.2d at 559. Third, *Schlossberg v. E.L. Trendel & Associates, Inc.*, 63 Ill. App. 3d 939, 941, 380 N.E.2d 950, 952 (1978), upheld dismissal of a declaratory judgment action where the contract in dispute was fully executed and there was no continuing legal relationship between the parties and, thus, there were no rights to declare. The availability of other remedies for the alleged duress supported that decision. Finally, DNR cites *Coles-Moultrie Electric Cooperative v. City of Charleston*, 8 Ill. App. 3d 441, 444, 289 N.E.2d 491, 493 (1972), in which this court affirmed the dismissal of a declaratory judgment action where the issues sought to be determined were then pending before the Illinois Commerce Commission.

■ The cases cited by defendants support the proposition that where the trial court does have the discretion to dismiss, the availability of another remedy justifies the exercise of that discretion. The case law is clear, however, that the existence of another remedy does not preclude a declaratory judgment action. *La Salle National Bank v. County of Cook*, 57 Ill. 2d 318, 322, 312 N.E.2d 252, 254 (1974). In this case, the availability of a quiet title action alone does not justify dismissal of the action on the pleadings.

"Declaratory judgment should not be granted unless the court can by such judgment dispose of the controversy between the parties."

*Marlow*, 222 Ill. App. 3d at 728, 584 N.E.2d at 349. Therefore, American Premier asserts, the limited declaratory remedy sought by plaintiffs should be denied because it does not resolve, once and for all, the ownership of the property. As *Marlow* acknowledges, however, the statute and case law permit declaratory relief not only when it might dispose of the entire matter, but also when it resolves "some part thereof." *Underground Contractors*, 66 Ill. 2d at 375, 362 N.E.2d at 300; 735 ILCS 5/2—701(a) (West 1996). *Marlow* held that the phrase "some part" means not just an element of a claim but "an entire claim which is part of more than one claim." *Marlow*, 222 Ill. App. 3d at 730, 584 N.E.2d at 350. In *Marlow*, the relief sought and denied was only one element of the cause of action. Such a finding, according to the *Marlow* court, would result in "impermissible piecemeal litigation." *Marlow*, 222 Ill. App. 3d at 731, 584 N.E.2d at 350. In the present action, plaintiffs seek a declaration that the defendants have no rights or interest in the property. Plaintiffs argue that this declaration would resolve "some part" of the matter because it would determine that these claimants have no rights, even if it would not determine precisely who does own the property. Under this view, declaratory judgment in this case would dispose of "an entire claim," that is, defendants' claim of title to the property.

Forty-one United States jurisdictions, including Illinois, have enacted the Uniform Declaratory Judgments Act (Uniform Act) (12 U.L.A. 309 (1996)). It is therefore appropriate for this court to look to the decisions of other states construing the Uniform Act in similar factual circumstances. *Illinois Power Co. v. Miller*, 11 Ill. App. 2d 296, 302, 137 N.E.2d 78, 81 (1956). In *City of Evanston v. Robinson*, 702 P.2d 1283 (Wyo. 1985), the Supreme Court of Wyoming affirmed a declaratory judgment in a class action lawsuit brought by property owners against the city, its lessees, and the lessee's assignees. The defendants in *Robinson* did not challenge the appropriateness of the class action lawsuit or the declaratory judgment remedy. The plaintiff class sought a declaration that the city acquired no right to the minerals underlying the streets and alleys of the town and, thus, could not convey that interest to the other defendants. The trial court, declaring that the defendants had no interest in the mineral rights, "did not determine the extent, if any, of the property owners' rights in the minerals." *Robinson*, 702 P.2d at 1285. On appeal, the city raised the question of who did have title to the mineral rights and the obligation to pay property taxes. The Wyoming Supreme Court, in a footnote, indicated: "These matters do not pertain to the single issue decided by declaratory judgment," and declined to address these issues. *Robinson*, 702 P.2d at 1285 n.1. Thus, there is at least some

precedent for the use of the declaratory judgment remedy in conjunction with the class action device in a situation very similar to the one presented by this case.

This is a case of first impression in Illinois. Plaintiffs have met the essential elements of a declaratory judgment action. We hold as a matter of law that under the Act a plaintiff may seek, and a trial court may grant, the type of relief sought by plaintiffs. We therefore reverse the dismissal of the declaratory judgment action and remand to the trial court for a hearing on the merits.

### III. CERTIFICATION OF CLASS ACTION

Because we hold that the trial court erred in dismissing plaintiffs' individual actions for declaratory judgment, we must also address the issue of whether the trial court correctly determined that a class action lawsuit should not be certified. There is no doubt that in a proper case declaratory relief is available in a class action lawsuit. *Cohan v. Citicorp*, 266 Ill. App. 3d 626, 629, 639 N.E.2d 1302, 1304 (1993). As in *Marlow*, the questions of whether this case may proceed as an action for declaratory judgment and whether it may proceed as a class action are "inextricably intertwined." *Marlow*, 222 Ill. App. 3d at 728, 584 N.E.2d at 348.

■ A proposed class action must meet four statutory prerequisites:
"An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
(3) The representative parties will fairly and adequately protect the interest of the class.
(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2—801 (West 1996).

The decision whether to certify a class action is within the sound discretion of the trial court. A reviewing court will reverse such a decision only upon a showing of a clear abuse of discretion or the application of impermissible legal criteria. *People v. Weiszmann*, 185 Ill. App. 3d 273, 279, 541 N.E.2d 205, 208 (1989).

■ On June 20, 1996, the trial court granted the plaintiffs' motion for class determination, thus implicitly finding that each of the four prerequisites was met. American Premier's motion to reconsider the class determination argued that this case is not an appropriate class

action because "individual questions of title to, and possession of, the various parcels of real estate involved, *predominate* over any common questions of fact or law relating to the 'original' indentures from the landowners to the railroad." (Emphasis added.) American Premier's memorandum in support of the motion asserted that the proposed class action fails to meet three of the four prerequisites: predominance of common issues, fair and adequate representation of the class, and appropriateness of the class action as a method for resolving the dispute.

Announcing its decision from the bench, the trial court addressed only the predominance argument:

"This is just one of those situations that doesn't fit class action. *** [M]aybe the only way to resolve this is with a lot of individual lawsuits. And as painful as that could be to the parties and ultimately to the Court, it appears to me that those individual questions of title, in fact, really do *predominate* over any common questions of fact or law that relate to the original documents." (Emphasis added.)

On appeal, the defendants again argue that three of the four class action prerequisites are not met. Because this appeal involves only the trial court's decision to withdraw its initial certification, we address only the basis of that decision, the predominance criterion. The trial court's ruling left its initial findings with regard to the other criteria undisturbed.

Plaintiffs assert that the *common* question, indeed the *only* question in this litigation, is whether the railroad acquired title to or an easement in the right-of-way. Within each proposed class, they contend, the same law applies and the facts are virtually identical. If one deed is construed, all of the deeds with the same language have the same construction. If an easement arose by prescription on one property, the same facts on another property also gave rise to an easement. No individual issues could predominate over these common questions because there are no other issues before the court.

Defendants cite *Weiszmann* in support of their argument that individual issues predominate. In that case, the State of Illinois brought quiet title actions against several individual defendants. Defendants counterclaimed, also seeking to quiet title, and unsuccessfully sought certification of a class. Denial of class certification on the basis of predominance of individual issues was affirmed on appeal. The court held that, in an action to quiet title:

"[S]uch factual questions as to the time of acquiring the interest in the property, the source of the title, the location of the property, and the application of legal and equitable principles in each

case would be unique." *Weiszmann*, 185 Ill. App. 3d at 280, 541 N.E.2d at 209.

These individual issues would indeed predominate if the relief sought were a declaration that individual members of the plaintiff class have title to specific portions of the abandoned right-of-way. However, because the question before the trial court is the nature of the interest acquired by the railroad over 100 years ago, these issues will not be reached in this litigation.

The test for determining whether common questions predominate is whether the successful adjudication of the plaintiffs' claim will establish a right to recovery in the class members. *Slimack v. Country Life Insurance Co.*, 227 Ill. App. 3d 287, 292-93, 591 N.E.2d 70, 74 (1992). Plaintiffs do not refer to "collateral estoppel" or *"res judicata"* in their brief but argue that if later disputes do arise regarding the actual ownership of the properties in question, those disputes will not involve these defendants because it will already have been determined, in this litigation, that they have no interest. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962 (1984). Plaintiffs' intention clearly is to preclude defendants from asserting any rights to the properties in subsequent litigation. They claim it is "pure speculation" that there will be any litigation in the future and, then, only if there are multiple claimants to a particular parcel and those claimants resort to the courts. Defendants, on the other hand, envision a flood of "impermissible piecemeal litigation" (*Marlow*, 222 Ill. App. 3d at 731, 584 N.E.2d at 350), as actual title to each parcel is judicially determined.

Because the decision to certify a class is within the discretion of the trial court, the trial court's assessment of the potential burden of subsequent piecemeal litigation is entitled to great deference. The comments of the trial court suggest that its decision was based on a concern that title to each individual piece of property would have to be resolved in this lawsuit. It is clear, from the initial certification decision, that the trial court would not reach the same conclusion with regard to class certification if it were contemplating granting the remedy sought by plaintiffs.

Because the trial court's ruling on the class action question was inextricably tied in to the mistaken conclusion that the requested declaratory relief was not available, we find that the trial court's decertification of the class action was based on an improper legal criterion. This action is therefore remanded to the trial court, where it may proceed as a class action.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is re-

versed and the matter remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

KNECHT and STEIGMANN, JJ., concur.