No. 2--03--1262

_________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE NORTHERN TRUST COMPANY, ) Appeal from the Circuit Court

Successor by Merger to Northern Trust/ ) of Lake County.

Lake Forest, as Trustee under Trust )

Agreement known as Trust No. 9269 dated )

March 1, 1995, and TIM TOWNE, )

)

Plaintiffs-Appellants, )

)

v. ) No. 99--MR--593

)

THE COUNTY OF LAKE, )

)

Defendant-Appellee )

) Honorable

(The Village of Mundelein, Intervenor- ) Raymond J. McKoski,

Appellee). ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

This case is a zoning dispute in which defendant, Lake County, denied plaintiffs a conditional  use permit to construct a wastewater treatment facility (the facility) as part of a proposed 144-unit townhome development (the development) on plaintiffs' vacant 40-acre parcel (the property) in unincorporated Lake County.  The property was held in trust, and 
plaintiff
 Tim Towne owns a 100% beneficial interest in the trust.  Lake County successfully moved to dismiss 
plaintiff
s' second-amended eight-count complaint, and 
plaintiff
s appeal.  On appeal, 
plaintiff
s argue only that counts I, IV, and V should be reinstated.  Count I seeks a declaratory judgment that the facility is a permitted use under the zoning regulations, and therefore, Lake County lacks the authority to require a conditional use permit for the construction of the facility.  Count IV seeks a declaratory judgment that plaintiffs have a vested right in constructing the development, and therefore, Lake County lacks the authority to change the zoning classification of the property to prohibit construction of the facility and the development in general.  Finally, count V seeks a declaratory judgment that the Illinois Environmental Protection Act (the Act) (415 ILCS 5/1 
et
 
seq.
 (West 2000)) preempts Lake County's zoning regulations that govern private sewage treatment plants such as the facility.  We affirm.

FACTS

The following facts are taken from plaintiff's second-amended complaint and various documents submitted by the parties.  Lake County has adopted a comprehensive plan known as the "Framework Plan," and in 1994, Lake County changed the designation of the property from "countryside" to "suburban."  In 1996, Lake County granted plaintiffs' request to rezone the property from countryside to suburban to conform to the Framework Plan.  The suburban classification permits a variety of uses, such as industry, offices, residences, and retail.

In May 1998, plaintiffs contracted to sell the property to Concord Development Corporation (Concord) in anticipation of constructing the development.  Plaintiffs and Concord submitted a proposed preliminary plat to Lake County.  Because neither public sanitary sewer services nor septic systems were available or practical, plaintiffs and Concord proposed the construction of a private sewage treatment plant on the property.  The record contains a 1994 letter from the Illinois Environmental Protection Agency (IEPA) in which the IEPA granted conditional, preliminary approval of the proposed treatment plant.  The IEPA approval letter stated that "[the development company] must obtain a written concurrence of the proposed project from the Lake County Department of Public Works and the Northern Illinois Planning Commission to amend the [Illinois Water Quality Management Plan] through inclusion of the proposed sewage treatment plan."  The IEPA also conditioned its approval on its issuance of an operating permit for the ultimate disposal of sewage from the facility.

At Lake County's insistence, plaintiffs and Concord applied for a conditional use permit to authorize construction of the facility.  On April 16, 1999, the Lake County Board denied the application.  After plaintiffs initiated the lawsuit on July 19, 1999, the Lake County Regional Planning Commission changed the property's Framework Plan classification from suburban to estate, thereby permitting only single-family residences on lots that are no smaller than two acres.  The Lake County Board also returned the property's zoning classification from suburban to countryside, which allows only single-family residences on lots that are no smaller than five acres.

On May 3, 2000, Lake County moved to dismiss plaintiffs' second-amended complaint pursuant to sections 2--615 and 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615, 2--619 (West 2000)).  We set forth only those portions of the motion that were directed to counts I, IV, and V.  Lake County asserted that count I must be dismissed under section 2--619 of the Code because plaintiffs did not exhaust their administrative remedies in resolving the issue of whether the facility was an "accessory use" permitted as a matter of right under the applicable zoning ordinance.  Lake County also argued that count IV must be dismissed under sections 2--615 and 2--619 because plaintiffs could not have had a vested right in the development before the issuance of a conditional use permit.  Finally, Lake County contended that count V must be dismissed under section 2--615 because the Act does not preempt conflicting local zoning ordinances.

On September 21, 2000, the trial court dismissed count I with prejudice, concluding that plaintiffs failed to exhaust their administrative remedies by requesting the Lake County Zoning Board of Appeals to determine whether the facility was an "accessory use" that did not require a conditional use permit under the ordinance.  The court dismissed count IV without prejudice, concluding that plaintiffs had no vested right in constructing the development because 
plaintiff
s failed to establish the probability that a conditional use permit would be issued.  The court noted that 
plaintiff
s could revive count IV if they exhausted their administrative remedies.  Finally, the court dismissed count V with prejudice, citing 
Village of Carpentersville v. Pollution Control Board
, 135 
Ill. 2d
 463 (1990), for the proposition that the Act does not preempt local zoning ordinances like the one at issue.

The court permitted the Village of Mundelein to intervene in March 2001.  After the court denied 
plaintiff
s' motion to reconsider the dismissal of count IV, it granted plaintiffs' request to dismiss count IV with prejudice.  On October 23, 2003, 
plaintiff
s voluntarily dismissed count II, the only remaining count, and this timely appeal followed.

ANALYSIS

On November 12, 2003, plaintiffs filed a notice of appeal in which they sought the reversal of the dismissal of count I and counts III through VIII.  However, in their appellate brief, plaintiffs direct their argument only toward counts I, IV, and V.  We limit our analysis to those counts because points not argued in an appellant's brief are waived.  See 188 Ill. 2d R. 341(e)(7).

This appeal requires us to review the dismissal of counts I, IV, and V, which all seek declaratory relief.  A declaratory judgment action requires (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests.  
735 ILCS 5/2--701 (West 2002); 
Beahringer v. Page
, 204 Ill. 2d 363, 372 (2003).  For an actual controversy to exist, the case must present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof.  
Howlett v. Scott
, 69 Ill. 2d 135, 141-42 (1977), citing 
Underground Contractors Ass'n v. City of Chicago
, 66 Ill. 2d 371, 375 (1977).  The declaratory judgment process exists so that the court may address a controversy after a dispute has arisen but before steps are taken that would give rise to a claim for damages or other relief.  
Beahringer
, 204 Ill. 2d at 372-73.

When ruling on a motion to dismiss filed under either section 2--615 or 2--619 of the Code, we must accept all well-pleaded facts as true and make all reasonable inferences therefrom.  
Village of South Elgin v. Waste Management of Illinois, Inc.
, 348 Ill. App. 3d 929, 930 (2004).  The record must be construed in the light most favorable to the nonmovant, but conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted.  
Village of South Elgin
, 348 Ill. App. 3d at 930-31.  Moreover, it is well established that courts are to construe pleadings liberally with a view toward doing substantial justice between the parties.  
Village of South Elgin
, 348 Ill. App. 3d at 931.

The parties dispute which standard of review applies to the dismissal.  Plaintiffs cite the well-settled principle that we apply 
de
 
novo
 review to a trial court's order dismissing a complaint under either section 2--615 or section 2--619 of the Code.  See 
Feltmeier v. Feltmeier
, 207 Ill. 2d 263, 266 (2003).  However, Lake County cites 
Stone v. Omnicom Cable Television of Illinois Inc.
, 131 
Ill. App. 3d
 210 (1985), for the proposition that such dismissals are subject to the abuse-of-discretion standard of review.

In 
Stone
, the 
defendant
s moved to strike and dismiss the plaintiff's complaint, but the opinion does not indicate under what statutory authority the motion was filed.  This court held that a trial court's decision to "grant or deny" a request for a declaratory judgment should not be disturbed absent an abuse of discretion.  
Stone
, 131 
Ill. App. 3d
 at 215.  Because "[t]he dismissal of a complaint for declaratory judgment is a proper method of declining to grant the requested relief" (
Stone
, 131 
Ill. App. 3d
 at 215), we reviewed the dismissal for an abuse of discretion.  
Stone
, 131 
Ill. App. 3d
 at 218-19.

However, this court and others have recently answered the same question differently, concluding that the dismissal of a declaratory judgment action is subject to 
de
 
novo
 review.  See, 
e.g.
, 
Beahringer
, 204 Ill. 2d at 369 (section 2--615 motion to dismiss); 
Adkins Energy, LLC v. Delta-T Corp.
, 347 Ill. App. 3d 373, 377 (2004) (Second District) (section 2--615 motion to dismiss); 
AG Farms, Inc. v. American Premier Underwriters, Inc.
, 296 Ill. App. 3d 684, 688 (1998) (Fourth District) (section 2--619 motion to dismiss); 
Roland Machinery Co. v. Reed
, 339 Ill. App. 3d 1093, 1097 (2003) (Fourth District) (section 2--619 motion to dismiss).  The 
Roland
 court noted as follows:

" 'While it is true *** that the [trial] court in its discretion may refuse to grant declaratory relief, the court has no discretion to refuse to entertain the action as against a motion to dismiss where the complaint states a cause of action.  [Citations.]  When confronted with a motion to dismiss, the trial court must sustain the complaint unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to some type of relief.  [Citations.]  A complaint for declaratory judgment which recites in sufficient detail an actual and legal controversy between the parties and prays for a declaration of rights and, if desired, other legal relief, states facts sufficient to state a good cause of action.  [Citations.]" 
Roland Machinery Co.
, 339 Ill. App. 3d at 1096-97, quoting 
Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.
, 79 
Ill. App. 3d
 799, 803 (1979).

In light of this recent authority, we overturn our decision in 
Stone
 regarding the applicable standard of review, and we hold that a trial court's decision to dismiss a declaratory judgment action under section 2--615 or section 2--619 of the Code is subject to 
de
 
novo
 review.

1.  Count I: Lake County's Authority to Require a Conditional Use Permit

Count I of the complaint asserted that the facility is a permitted "accessory use" under the applicable zoning ordinance and, therefore, Lake County lacks the authority to require a conditional use permit for the construction of the facility.  Lake County appended a copy of the relevant ordinance to its brief.  The ordinance governs "accessory uses" and provides in relevant part:

"Except as otherwise expressly provided or limited by this Chapter, accessory structures and uses are permitted in any District in connection with any principal use lawfully existing within such District.  Any question of whether a particular use is permitted as an accessory use by the provisions of this Section shall be determined by the Zoning Officer pursuant to his or her authority to interpret the provisions of this Chapter."  Lake County Zoning Ordinance, ch. 1, §5500(A) (1999)
.

The parties have inexplicably failed to provide this court with a copy of the Lake County ordinance defining "accessory use."  However, in their second-amended complaint, plaintiffs allege that the relevant ordinance defines "accessory use" as follows:

"A use which (1) is subordinate to and services a principal building or a principal use legally existing on the same zoning lot; (2) is subordinate in area, extent, and purpose to the principal building or principal use; (3) contributes to the comfort, convenience or necessity of the occupants, business or industry of the principal structure or principal use served; and (4) is located on the same zoning lot as the principal structure or principal use served."  Lake County Zoning Ordinance, ch. 1, §3300 (1999).

Although the motion is not specific, it appears that Lake County relied upon subsection 2--619(a)(9) in arguing for a dismissal of count I.  A section 2--619 proceeding permits a dismissal after the trial court considers issues of law or easily proved issues of fact.  Section 2--619(a)(9), in particular, allows a dismissal when "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2--619(a)(9) (West 2000).  The term "affirmative matter" as used in section 2--619(a)(9) has been defined as a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint.  
Krilich v. American National Bank & Trust Co. of Chicago
, 334 Ill. App. 3d 563, 570 (2002).

In ruling on a motion to dismiss under section 2--619, the trial court may consider pleadings, depositions, and affidavits.  The question on appeal is " ' "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." ' "  
Krilich
, 334 
Ill. App. 3d
 at 570, quoting 
Zedella v. Gibson
, 165 Ill. 2d 181, 185-86 (1995), quoting 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17 (1993).

Lake County cites two statutory principles as affirmative matter to defeat count I: (1) before filing suit, plaintiffs failed to exhaust their administrative remedies as required by section 5--12012 of the Counties Code (55 ILCS 5/5--12012 (West 2000)) and (2) section 5--12009.5(a) of the Counties Code (55 ILCS 5/5--12009.5(a) (West 2000)) authorized Lake County to require a conditional use permit.

The fundamental rule of statutory interpretation is to give effect to the intent of the legislature.  A court first looks to the words of the statute.  The language of the statute is the best indication of the legislative intent.  When the statutory language is clear, it must be given effect without resort to other tools of interpretation.  In interpreting a statute, it is never proper for a court to depart from the plain language by reading into the statute exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent.  
County of Knox ex rel. Masterson v. Highlands, L.L.C.
, 188 Ill. 2d 546, 556 (1999).

Pursuant to the Counties Code, "any order, requirement, decision or determination made by an administrative official charged with the enforcement of any [county] ordinance or resolution" is reviewable first by the zoning board of appeals (55 ILCS 5/5--12011 (West 2000)); and then "[a]ll final administrative decisions of the board of appeals *** shall be subject to judicial review pursuant to the provisions of the Administrative Review Law" (55 ILCS 5/5--12012 (West 2000)).

The doctrine of exhaustion of remedies helps establish a proper relationship between the court system and administrative bodies.  
Village of South Elgin
, 348 Ill. App. 3d at 934.  Generally, a party aggrieved by an administrative action must first pursue all available administrative remedies before resorting to the courts.  
Village of South Elgin
, 348 
Ill. App. 3d
 at 934.  The purpose of the doctrine is to allow administrative bodies to develop a factual record and to permit them to apply the special expertise that they possess.  
Village of South Elgin
, 348 
Ill. App. 3d
 at 934-35.  Exhaustion also minimizes interruption of the administrative process.  Moreover, the aggrieved party might succeed before the administrative body, obviating the need for judicial involvement, thereby conserving judicial resources.  
Village of South Elgin
, 348 
Ill. App. 3d
 at 935.

In this case, the parties agree that the zoning officer was charged with determining whether 
the 
facility qualifies as a permitted accessory use under Lake County's zoning scheme.  See Lake County Zoning Ordinance, ch. 1, §5500(A) (1999).  In their reply brief, 
plaintiff
s assert that "the zoning officer never made any determination" on the issue of whether the facility was an accessory use.  We conclude that 
plaintiff
s did not exhaust their administrative remedies because they neither obtained a determination by the zoning officer nor appealed an adverse ruling by the zoning board of appeals.  Plaintiffs' failure to exhaust their administrative remedies is an affirmative matter (see 
Village of South Elgin
, 348 
Ill. App. 3d
 at 934), and we conclude that it was a proper basis for dismissing count I pursuant to section 2--619(a)(9) of the Code.  Because we resolve the dismissal of count I under the exhaustion principle, we need not consider Lake County's alternative statutory argument.

2.  Count IV: Vested Rights

We next address plaintiffs' argument that the trial court erroneously dismissed count IV, which alleged that 
plaintiff
s enjoyed a vested right in constructing the facility and, therefore, Lake County was precluded from denying the conditional use permit and ultimately rezoning the property after the lawsuit began.  It is well settled that no party has a vested right to the continuation of a statute or ordinance, and this general rule applies to zoning ordinances.  See, 
e.g.
, 
1350 Lake Shore Associates v. Mazur-Berg
, 339 Ill. App. 3d 618, 631 (2003).  However, there are circumstances under which a party may obtain a vested right to develop its property in accordance with a certain zoning ordinance despite an amendment thereto.  
1350 Lake Shore Associates
, 339 Ill. App. 3d at 631.

Where a landowner makes expenditures or incurs obligations in reliance on the probability that a building permit will be issued or a plat will be approved, a vested right to obtain the permit or the approval may be acquired, even though the zoning classification of the property at issue is subsequently changed to prohibit the proposed use.  
Bank of Waukegan v. Village of Vernon Hills
, 254 Ill. App. 3d 24, 31 (1993).  For a landowner to invoke this rule, " 'he must show (1) that there was a "probability" that [municipal approval] would issue and (2) that a substantial change in position was incurred based upon this probability.' " 
Bank of Waukegan
, 254 
Ill. App. 3d
 at 31, quoting 
People ex rel. Shell Oil Co. v. Town of Cicero
, 11 Ill. App. 3d 900, 904 (1973).  A property owner can show a probability that approval is forthcoming when the property at issue is zoned to permit the use requested by the landowner.  
Bank of Waukegan
, 254 
Ill. App. 3d
 at 31.  The probability-of-approval prong of the vested interest test has also been viewed as an inquiry into whether the property owner acted in good faith in relying on the previous zoning ordinance.  
1350 Lake Shore Associates
, 339 Ill. App. 3d at 632.  In this case, the trial court concluded that 
plaintiff
s failed to demonstrate a probability that the facility would be approved and did not reach the issue of whether 
plaintiff
s' change in position was substantial.

Plaintiffs initially argue that Lake County improperly moved to dismiss count IV under both sections 2--615 and 2--619 of the Code.  We disagree.  A section 2--615 motion admits all well-pleaded facts and attacks the legal sufficiency of the complaint; a section 2--619 motion admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeat the action.  
Jenkins v. Concorde Acceptance Corp.
, 345 Ill. App. 3d 669, 674 (2003).  Section 2--619.1 of the Code allows a litigant to combine a section 2--615 motion to dismiss and a section 2--619 motion to dismiss in one pleading.  735 ILCS 5/2--619.1 (West 2000).  However, this statute does not authorize hybrid motion practice.  
Jenkins
, 345 
Ill. App. 3d
 at 674; 
Storm & Associates, Ltd. v. Cuculich
, 298 Ill. App. 3d 1040, 1046 (1998).  A defendant's failure to specifically designate whether a motion to dismiss is brought pursuant to section 2--615 or section 2--619 is not always fatal, but reversal is required if prejudice results to the nonmovant.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484 (1994); 
Jenkins
, 345 
Ill. App. 3d
 at 674.  When confronted with such an omission, reviewing courts typically review the nondesignated motion according to its grounds, its requests, or its treatment by the parties and the trial court.  
Nickum
, 159 Ill. 2d at 484.  Moreover, this court may affirm a correct dismissal for any reason appearing in the record.  
Jenkins
, 345 
Ill. App. 3d
 at 674.  Accordingly, we must examine the motion's grounds as well as treatment below to decide the propriety of the trial court's ruling concerning the portion of the motion directed to count IV.  See 
Nickum
, 159 Ill. 2d at 484.

The heading of Lake County's motion to dismiss count IV mentioned both sections 2--615 and 2--619 of the Code, but the argument portion of the motion did not differentiate or even cite the sections.  Plaintiffs objected to the deficiency in the trial court, and Lake County's counsel speculated that his written argument contained elements of both sections.  However, we conclude that the motion to dismiss count IV is best characterized as a motion pursuant only to section 2--619(a)(9) of the Code because Lake County relied upon the original zoning classification, which did not authorize the facility's construction without a conditional use permit, as affirmative matter to defeat count IV.  We conclude that 
plaintiff
s could not have been prejudiced by Lake County's nondesignated motion because it did not set forth an argument that count IV was deficient under section 2--615.

In their briefs, 
plaintiff
s focus almost exclusively on evidence of their substantial change in position in light of their belief that the Lake County Board would approve the facility.  However, we agree with the trial court that Lake County offered adequate affirmative matter to negate 
plaintiff
s' allegation that approval of the facility was probable.  Plaintiffs argue that the suburban zoning classification in effect when they planned the development conferred a vested right in constructing the facility.  Although the zoning designation permitted "townhome" construction, it did not expressly authorize the construction of a wastewater treatment facility.  Therefore, 
plaintiff
s could not have reasonably expected that the facility was a permitted use until a conditional use permit was issued or the facility was declared an accessory use.  This conclusion is supported by the 1994 letter in which the IEPA expressly conditioned its preliminary approval of the facility on the subsequent approval by the Lake County Department of Public Works.  We conclude that the trial court correctly dismissed count IV.

3.  Count 5: Preemption

Finally, plaintiffs contend that the Act preempts the Lake County zoning ordinances that govern the proposed facility.  Section 39.2(g) of the Act provides that "[t]he siting approval procedures, criteria and appeal procedures provided for in this Act for new pollution control facilities shall be the exclusive siting procedures and rules and appeal procedures for facilities subject to such procedures.  Local zoning or other local land use requirements shall not be applicable to such siting decisions."  415 ILCS 5/39.2(g) (West 2000).  Section 39.2(a) vests county boards and other local governmental bodies with the authority to grant requests for local siting approval.  415 ILCS 5/39.2(a) (West 2002); 
Village of South Elgin
, 348 Ill. App. 3d at 935.  Read together, sections 39.2(a) and 39.2(g) make plain the legislature's intent that county boards and like entities shall be the exclusive forum for passing on questions regarding the application of the Act to the siting of pollution control facilities.  
Village of South Elgin
, 348 Ill. App. 3d at 935-36.

However, at the time 
plaintiff
s filed their application for a conditional use permit, section 39(c) of the Act provided in relevant part:

"[E]xcept for new pollution control facilities governed by Section 39.2, *** the granting of a permit under this Act shall not relieve the applicant from meeting and securing all necessary zoning approvals from the unit of government having zoning jurisdiction over the proposed facility."  415 ILCS 5/39(c) (West 2000).

Our supreme court has held that, pursuant to section 39(c), permits issued pursuant to the Act do not preempt local zoning ordinances.  
Village of Carpentersville v. Pollution Control Board
, 135 Ill. 2d 463, 469 (1990).  Citing the 1994 IEPA preliminary approval letter as evidence that the facility is governed by the permit provisions of the Act, plaintiffs contend that the facility qualifies as a "new pollution control facility" governed by section 39.2 of the Act, and therefore, the facility is exempted from Lake County's zoning approval process.

The applicable version of section 3.32(a) of the Act defines "pollution control facility" as follows:

"(a) 'Pollution control facility' is any waste storage site, sanitary landfill, waste disposal site, waste transfer station, waste treatment facility, or waste incinerator.  This includes sewers, sewage treatment plants, and any other facilities owned or operated by sanitary districts organized under the Metropolitan Water Reclamation District Act.

The following are 
not
 pollution control facilities:

* * *

(3) sites or facilities used by any person conducting a waste storage, waste

treatment, waste disposal, waste transfer or waste incineration operation, or a combination thereof, for wastes generated by such person's own activities, when such wastes are stored, treated, disposed of, transferred or incinerated within the site or facility owned, controlled or operated by such person, or when such wastes are transported within or between sites or facilities owned, controlled or operated by such person[.]"  (Emphasis added.)  415 ILCS 5/3.32(a) (West 2000) (now 415 ILCS 5/3.330(a) (West 2002)).

In turn, "a pollution control facility initially permitted for development or construction after July 1, 1981" qualifies as a "new pollution control facility" under the applicable version of section 3.32(b) of the Act.  415 ILCS 5/3.32(b) (West 2000) (now 415 ILCS 5/3.330(b) (West 2002)).  There is no dispute that the facility would be permitted for construction after July 1, 1981.

However, we agree with Lake County that the facility meets the description of section 3.32(a)(3) of the Act, which excludes certain sites and facilities from the definition of a "pollution control facility."  Conceding that they would own, control, or operate the facility and put it to their own use, plaintiffs nevertheless argue that the facility does not meet the definition exclusion of section 3.32(a)(3) because the residents of the townhomes would use the facility as well.  Plaintiffs cite no authority for the proposition that a facility is excluded as a new pollution control facility only if the owner, controller, or operator is also its sole user.  Because it conflicts with the plain language of the statute, we reject 
plaintiff
s' interpretation of section 3.32(a)(3).

Plaintiffs further argue that the facility does not fall under section 3.32(a)(3) because "the waste will not be completely treated within the site or facility owned."  We again disagree with 
plaintiff
s' interpretation.  Nothing in section 3.32(a)(3) requires that wastes be treated completely for a facility to be excluded from the definition of a "new pollution control facility" under the Act.  Moreover, the section expressly includes operations involving the transport of wastes within the site, which would naturally occur before treatment is ever completed.

Because 
the 
facility is excluded from the definition of a "new pollution control facility" under section 3.32(a)(3) of the Act, the facility is not exempted from section 39(c), which declares that "the granting of a permit under [the] Act shall not relieve the applicant from meeting and securing all necessary zoning approvals from the unit of government having zoning jurisdiction over the proposed facility."  415 ILCS 5/39(c) (West 2000).  Therefore, the trial court correctly dismissed count V under section 2--615 of the Code.

We have reviewed plaintiffs' remaining arguments and conclude that they lack merit, and in any event, we need not consider them because counts I, IV, and V were properly dismissed on other bases.  We further note our frustration that 
plaintiff
s likely included these arguments to obfuscate the central issues of this case.  For the preceding reasons, we affirm the judgment of the circuit court of Lake County.

Affirmed.

BOWMAN and CALLUM, JJ., concur.